IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RAYMOND DONOVAN WILLIAMS,      :
#13371-003,                    :
    Petitioner,           :
                           :   CRIMINAL NO. 13-00213-KD-B-1
vs.                            :   CIVIL ACTION NO. 15-0233-KD-B
                           :
UNITED STATES OF AMERICA,      :
                           :
    Respondent.           :

<u>ORDER</u>

Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 93), Petitioner's Motion to Amend and Add a Supplement (Doc. 95), Petitioner's Motion to Supplement (Doc. 96), the Government's Response in Opposition (Doc. 102), Petitioner's Reply to the Government's Response (Doc. 104), and Petitioner's Amended and Supplemental Memorandum in Support (Doc. 108). Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[1] Upon consideration, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is **DENIED**, this action is **DISMISSED**, and judgment shall be entered in favor of

---

[1] A district court is not required to hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel. <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) ("A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required when the petitioner's allegations are affirmatively contradicted by the record.") (citation omitted).

Respondent, the United States of America, and against Petitioner, Raymond Donovan Williams. Should Williams file a certificate of appealability, it should be denied as he is not entitled to appeal *in forma pauperis*.

## I.   PROCEDURAL BACKGROUND

Petitioner Raymond Donovan Williams was indicted on August 23, 2013 on one count of conspiracy to possess cocaine with intent to distribute and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846 and 21 U.S.C § 841(b)(1)(B). (Doc. 30). This indictment came after the arrest of Williams and a co-defendant at a truck stop, where they were involved in the transport and protection of a cocaine load. (Doc. 102 at 2). This arrest was made possible due to the cooperation of a cooperating witness (CW), who assisted law enforcement in a sting operation after his own arrest. (Id. at 1).

The CW told investigators that Williams and his co-defendant, a police officer from Prichard, had previously transported cocaine for him. (Id. at 2). Police recorded conversations between Williams and CW in which Williams agreed to pick up five kilograms of cocaine at a truck stop in Grand Bay for $15,000.00 [2]. (Id.) When Williams and the co-defendant arrived to pick up the cocaine as planned, both were arrested.

---

[2] One kilogram was actual cocaine. The other four were placebos.

(Id.; see also Doc. 30).

After a one-day trial, a jury found Williams guilty of conspiracy and possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B). (Doc. 60). Williams was sentenced to a term of eighty-four (84) months imprisonment. (Doc. 75). Williams timely appealed his judgment. (Docs. 71, 73). The Eleventh Circuit affirmed his conviction in September 2014, holding that "there was more than sufficient evidence to infer that a drug trafficking conspiracy… existed." (Doc. 90 at 4).

Williams subsequently filed his § 2255 motion on April 28, 2015[3]. (Doc. 93). On May 8, 2015, the Court ordered Williams to sign the motion and re-file. (Doc. 94). Williams subsequently filed a Motion to Amend and add a Supplement on May 3, 2015[4] and a Motion to Supplement on May 15, 2015. (Docs. 95, 96). The court granted these motions on June 1, 2015. (Docs. 97, 98). The Government filed a Response in Opposition on August 11, 2015. (Doc. 102). Williams replied to the Government's response on August 27, 2015. (Doc. 104). Williams filed an Amended and Supplemental Memorandum in Support on December 8, 2016. (Doc. 108).

---

[3] Under the mailbox rule, absent contrary evidence, a prisoner's motion is deemed filed on the date it is delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (llth Cir. 2001); see Doc. 1 at 13.
[4] This document was received by the court on May 8, 2015.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, *8-9 (S.D. Ala. August 4, 2008) (quotation marks in original).

## III. **DISCUSSION**

Williams raises many individual claims in the instant petition. The majority of these claims are brought under a principle claim of ineffective assistance of counsel. Claims against his trial counsel can be found in his Motion to Vacate (Doc. 93), Motion to Amend (Doc. 95), Motion to Supplement (Doc. 96), Reply to the Government's Response (Doc. 104), and Amended

and Supplemental Memorandum in Support (Doc. 108). Additionally, he makes several claims that do not seem to be related to the conduct of his counsel, focusing instead on prosecutorial and judicial misconduct. Some of Williams' claims are subject to a procedural bar, as they were raised before the Eleventh Circuit in a direct appeal. Several of the claims fail for vagueness, as Williams did not specify the details of the offensive conduct or point to said conduct in the record. The rest fail on their merits.[5]

**A. Procedural Bar**

It is well-settled that a prisoner is procedurally barred from raising arguments in a motion to vacate that have already been raised and rejected on direct appeal. <u>Stoufflet v. United States</u>, 757 F.3d 1236, 1239 (11th Cir. 2014). Williams raised two issues on appeal to the Eleventh Circuit – that the district court erred in denying his motion for judgment of acquittal challenging the sufficiency of the evidence offered to establish that he conspired with another person to possess with intent to distribute cocaine, and that the district court abused its discretion by admitting evidence of his past possession of cocaine. (Doc. 90 at 1-2). The Eleventh Circuit affirmed on both

---

[5] The organization of the claims in this order does not reflect the order in which Williams presented the claims in his motions, reply, and amended/supplemental memorandum. The claims are often scattered and disjointed, and the undersigned therefore found it necessary to group the claims as follows for a more cognizant analysis.

issues. (Id. at 2). Therefore, to the extent that the claims in the instant petition relate to these issues, they are procedurally barred.

### 1. Counsel was ineffective for failing to challenge the Government on a lack of evidence in the alleged conspiracy

Williams claims that counsel was ineffective because he "failed to challenge the government on the lack of evidence in the alleged conspiracy other than CW's allegations." (Doc. 93-1 at 4). This issue was raised on direct appeal. The Eleventh Circuit held:

> "As the record shows, there was more than sufficient evidence to infer that a drug trafficking conspiracy between Williams, Edmond Kennies Burke, and [CW] existed – notably, before the August 2013 recorded conversations, when [CW]began acting as a government agent. To begin with there was testimony that [CW] repeatedly told investigators about their previous cocaine dealings. The recordings also revealed a pre-existing criminal relationship between Williams and[CW]. Additionally, given the evidence of Williams's extensive gambling activity over a period of months preceding the undercover operation, without legitimate income to sustain the activity, the jury could have reasonably inferred that Williams funded his gambling through the fees he earned delivering drugs with [CW]prior to August 2013. On this record, accepting all inferences in the government's favor, a reasonable jury could conclude that [CW] and Williams were participating in a conspiracy that pre-dated [CW's] becoming a government agent.
>
> A jury also could have reasonably concluded that Burke and Williams were participating in a conspiracy, despite Burke's lack of knowledge of the other member of the conspiracy…. Moreover, the statements Williams and Burke made during the

> delivery support the inference that Burke knew a
> drug transaction was about to occur. Thus, we
> conclude a reasonable jury could have found Burke to
> be a knowing participant in the conspiracy."

(Doc. 90 at 4). It is clear the Eleventh Circuit has already done a thorough analysis of this issue, and this claim should therefore be considered procedurally barred. See Stoufflet, 757 F.3d at 1242. To the extent that Williams argues that counsel was ineffective for failing to challenge the Government on this issue, it is clear that any such argument would be futile.

## 2. Counsel was ineffective for failing to challenge 404(b) evidence presented at trial

Williams claims that counsel was ineffective for failing to file a Motion to Suppress with regard to "404(b) evidence" of his prior cocaine charge. (Docs. 93-1 at 4; 108 at 22-26). The claims regarding Federal Rule of Evidence 404(b) were raised on direct appeal. (Doc. 90). The Eleventh Circuit held that the district court did not err in admitting evidence of the prior possession of cocaine:

> "Here, the district court did not abuse its discretion
> in admitting evidence of Williams's prior possession of
> crack cocaine. For starters, since Williams pleaded not
> guilty, raising a lack of knowledge or wrongful intent
> defense, he placed his intent at issue, thereby
> imposing a substantial burden on the government to
> prove his knowledge of the cocaine and his intent to
> participate in the drug conspiracy. In addition, the
> evidence from both Williams's sister and the officer
> who found the cocaine and money among Williams's
> belongings was sufficient to permit the jury to find
> beyond a reasonable doubt that Williams possessed the
> cocaine. Further, the prejudicial effect of the

evidence did not substantially outweigh its probative
value, given the government's need for evidence of
Williams's intent to transport cocaine. Moreover, the
prior cocaine possession and the cocaine distribution
charge at issue, although different in quantity of
drugs and in Williams's position as a possessor or
distributor, were substantially similar in their
overall purpose to intentionally possess cocaine.

In any event, even if the district court did err in
admitting the Rule 404(b) evidence, the error was
harmless since, as we've discussed, there was
sufficient evidence of Williams's guilt without the
evidence of the prior cocaine possession."

(Doc. 90 at 6-7). It is clear these issues were thoroughly
analyzed by the Eleventh Circuit, and to the extent that
Williams is challenging this evidence in the instant motion,
those claims are procedurally barred from being relitigated. See
Stoufflet v. United States, 757 F.3d at 1242. To the extent that
Williams is claiming that counsel should have moved to suppress
this evidence, it is again clear that any such motion would have
been futile.

**B. Vague and Conclusory Allegations**

Many of the claims raised by Williams in the instant case
are not well-supported, and amount to merely vague or conclusory
statements about the perceived inadequacies of his trial
counsel's performance. Conclusory assertions will not support a
claim of ineffective assistance of counsel. Randolph v. McNeil,
590 F.3d 1273, 1276 n.1 (11th Cir. 2009); see also Wilson v.
United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v.

Dugger, 941 F.2d 996, 996 (11th Cir. 1991)(addressing the issue in the context of § 2254); Story v. United States, 2012 U.S. Dist. LEXIS 26031, 2012 WL 671677, at *4 (S.D. Ala. Jan. 31, 2012)(rejecting § 2255 claim of ineffective assistance where the movant had not indicated what a more thorough investigation by his attorney would have revealed or how any supposed discovery would have been fruitful in his case).

      1. **Counsel was ineffective for failing to object to or supplement incomplete or missing conversations in the evidence, for failing to object to evidence beyond the scope of the conspiracy, for allowing evidence that had been "tampered" or "altered", and for failing to object to "erroneous information"**

Williams claims counsel was ineffective due to a failure to object to a variety of evidentiary issues, but he fails to elaborate on any of the perceived inadequacies. Williams alleges that counsel was ineffective because he failed to offer other conversations that occurred between CW and Williams that "taint" the case. (Doc. 104 at 3). He seems to re-address this issue in this amended/supplemental response, when he argues that counsel was ineffective for "failing to object to the testimony or the presentation of the exhibits as these exhibits were not complete, inaccurate and perjured." (Doc. 108 at 56). Williams further alleges that counsel was ineffective for allowing evidence that had been "tampered", "altered" or was beyond the scope of the alleged conspiracy, and that counsel allowed the

Government to "mislead the court with erroneous information further complicating due process". (Doc. 93-1 at 5).

At no point does Williams go into detail about the alleged insufficiencies of the evidence presented. Williams presents no evidence regarding the content of the conversations he believes were omitted from the evidence, how the offered messages 'taint' the case, or how any additional conversations could have improved Williams' defense. (Doc. 104). Further, he does not indicate what evidence he believes was tampered or altered, what evidence was erroneous, what evidence he believes was beyond the scope of the conspiracy in this case, or how the Government violated due process in bringing forth this evidence. (Doc. 93-1 at 5). As such, these claims are vague and conclusory, and fail for that reason. See Randolph, 590 F.3d at 1276 n.1.

### 2. Counsel was ineffective for failing to object to the fact that the evidence was insufficient to Prove Crimes Charged under 841(a)(1) and 846

Williams claims that counsel was ineffective for failing to raise "facially and legally sufficient objections to the asserted facts that were erroneously supporting the information filed pursuant to 841(a)(1) and 846". (Doc. 93-1 at 5). If counsel had conducted a meaningful investigation, Williams alleges counsel would have discovered "that it was inapplicable to support the government's indictment of petitioner for 841(a)(1) and 846 nor the quantity of cocaine it was implied he

was accountable for." (Id.). Williams also seems to indicate that this would have required counsel challenging the time frame and duration of the alleged events. (Id.)

To the extent that Williams is claiming there is not enough evidence to support the conspiracy charge in 21 U.S.C. § 846, this claim has already been argued before the Eleventh Circuit, and has been found meritless. See, supra, pg. 6-7. As to the claim that there was insufficient evidence to support his conviction under 841(a)(1), Williams does not plead his claim with the specificity required to support an allegation of ineffective assistance of counsel. He does not state why the facts presented were not enough to support the indicted offenses, or what additional investigation should have been done on the subject. He does not explain why the time frame and duration of the events are worthy of investigation or objection. This amounts a vague and conclusory claim and should be dismissed on those grounds. See Randolph, 590 F.3d at 1276 n.1.

### 3. Counsel was ineffective for failing to argue that hearsay testimony should not be allowed

Williams claims counsel was ineffective because he did not argue that the testimony of the Government's witnesses should not be allowed under Federal Rule of Evidence 807.[6] (Doc. 104 at

---

[6] Federal Rule of Evidence 807 is a hearsay exception that allows a statement even if not specifically covered by a hearsay exception in Rule 803 or 804 if "the statement has equivalent circumstantial guarantees of trustworthiness", the statement "is offered as evidence of a material fact", is "more probative

1). He claims this exception to the hearsay rule is so extraordinary, reasonable counsel should have objected to the inclusion of evidence under this exception. (Id. at 2). This allegedly resulted in prejudice by significantly affecting the outcome of the trial. (Id.). Williams also claims that his direct appeal to the Eleventh Circuit addressed the issue of the credibility of witnesses, citing the phrase "regardless of the excluded testimony". (Id.). As a result, he claims his right to a fair trial was violated, and he was prevented from presenting his defense. (Id.).

Williams claims that counsel should have objected to this residual exception because it is so "extraordinary". (Doc. 104 at 1). He does not indicate what evidence was offered under this rule, or why that evidence does not meet the criteria for admission under the rule. (Id.). He also does not point to what part of the Eleventh Circuit decision he is referring to with regards to excluded testimony. As such, these are vague and conclusory claims and should therefore be dismissed. See Randolph, 590 F.3d at 1276 n.1.

---

on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts", and admitting it serves "the purposes of these rules and the interest of justice." Fed. R. Evid. 807(a). The statement is only admissible "if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b).

**4. Counsel was ineffective for failing to object to the testimony of Agent Greene and Agent McClain**

Williams claims counsel was ineffective for failing to object to opinion testimony by a government witness "that lacks the knowledge and experience to determine said evidence". Williams fails in his initial complaint to point to the record to identify the witness or offer any additional evidence as to what opinion testimony he is referring to. (Doc. 93-1). However, in his amended/supplemental complaint, he appears to be pointing to Agent Greene's testimony that he heard CW use the term "Viper". (Doc. 108 at 32-34). Williams claims that Agent Greene wasn't present for the interrogation in question. (Id.).

Williams also claims that counsel was ineffective because he did not challenge Deputy McClain, a witness for the prosecution, during the trial. (Doc. 93-1 at 5). Williams claims counsel should have challenged McClain's testimony "when he was actually contradicting his own statements and reports throughout the proceeding in violation of perjury." (Id.). Williams further alleges that counsel allowed McClain to testify to facts that were not in evidence. (Id.). Williams also alleges counsel was ineffective for failing to object to inconsistencies in Agent McClain's account of the execution of the search warrant and the involvement of Deputy Arendall, and that Agent McClain overstated CW's reliability in the instant case. (Doc. 108 at

28-32).

In Williams' Reply to the Government's Response, Williams makes it clear that he is not questioning Deputy McClain's experience, but rather "his methods and his integrity as well as his motives". (Doc. 104 at 8). He mentions McClain's "track record of questionable tactics and procedures", and discusses the admissibility of evidence gathered by McClain because of a defect in the search warrant. (Id.). Williams points to a comment from Deputy McClain stating the "Deputy Arendall found the drugs", and then elaborates on a later conversation between Williams and Arendall. He does not explain these statements in the context of his overall claim. (Id. at 9). He also points to alleged wrongful activity by McClain during a search relevant to his state case, which Williams claims shows that McClain has a history of planting drugs at crime scenes[7]. (Id.).

Williams points to no credible evidence regarding the alleged inconsistencies, and he does not point to specific instances in the record where contradictory testimony occurred. As such, these claims are dismissed as being vague and conclusory. See Randolph, 590 F.3d at 1276 n.1.

---

[7] To the extent that Petitioner's claims against Agent McClain pertain to the 404(b) evidence discussed supra, pg. 7-9, these claims are precluded, as they were raised on direct appeal.

### C. Ineffective Assistance of Counsel

The rest of the claims raised by Williams in his Motion to Vacate fail on their merits, as they can not meet the exacting standard for proving ineffective assistance of counsel. In Strickland v. Washington, the Supreme Court adopted a two-prong standard for evaluating claims of ineffective assistance of counsel. Strickland, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the requirements of this two-prong standard, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 593 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)(citing Strickland, 466 U.S. at 687). Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). In order to satisfy the "performance" prong of the Strickland test, a petitioner is required to show that his attorney's representation "fell below an objective standard of reasonableness", which is measured by "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. That is, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." Id. at 687. In considering such a claim, the court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999)(citations omitted). Thus, a petitioner has a difficult burden because to be considered unreasonable, "the performance must be such that 'no competent counsel would have taken the action that [the petitioner's] counsel did take.'" Ball v. United States, 271 F. App'x 880 (11th Cir. 2008)(citations omitted).

In order to satisfy the "prejudice" prong of the Strickland test, a petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The petitioner "must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004)(citations omitted). Further, it is not enough to merely show that the alleged errors affected the case in some imaginable way. See id. at 1293-94. ("[T]hat the errors had some conceivable effect on the outcome of the proceeding is

16

insufficient to show prejudice")(quoting <u>Strickland</u>, 466 U.S. at 693)(internal quotation marks omitted). Thus, "under the exacting rules and presumptions set forth in <u>Strickland</u>, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" <u>Windom v. Sec'y, Dep't of Corr.</u>, 578 F.3d 1227, 1248 (11th Cir. 2009)(citations omitted). Williams cannot meet this exacting standard on any of his claims in the instant case, for the reasons outlined below.

### 1.Counsel was ineffective due to a conflict of interest

Williams claims "Counsel Actively Was Ineffective By representing Conflicting Interests that adversely affected his performance, advice and Loyalty to Petitioner. These conflicts denied Petitioner the benefit of reasonably effective counsel." (Doc. 93-1 at 8). According to Williams, "counsel clearly believed he was guilty of the charges and claims mentioned, and therefore could not properly represent him as being innocent of these claims because he had a conflict of interest." (<u>Id.</u> at 4). Williams alleges that this "presumption of guilty" affected counsel's performance and decision-making throughout the proceedings, and Williams was prejudiced as result. (<u>Id.</u> at 4, 8). Williams claims that if he had been aware of this "conflict and counsel's inability to prepare for a case of this nature",

he would have retained new counsel. (Id. at 5).

A defendant's Sixth Amendment right to effective assistance of counsel is denied when defense counsel has an actual conflict of interest that adversely affects the defendant. United States v. Rodriguez, 982 F.3d 474, 477 (11th Cir. 1993). "Where an ineffective assistance claim is based on a conflict of interest, "a defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance." McCorkle v. United States, 325 F. App'x. 804, 808 (11th Cir. 2009) 8 (citing Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001)). "An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests'". Id. (citing Freund v. Butterworth, 165 F.3d 829, 859 (11th Cir. 1999)). "The conflict cannot be merely possible, speculative or hypothetical." Id. (citing Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001)).

To distinguish between actual and possible conflicts of interest, the Eleventh Circuit has specified that they "will not find an actual conflict of interest unless [the defendant] can point to specific instances in the record to suggest an actual conflict or impairment of [his] interests." Id. (citing Reynolds, 253 F.3d at 1343). To prove this actual conflict, the

---

8 "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (2005).

defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to [himself]". Id. If he did not make such a choice, the conflict remains hypothetical. Id. (citing Reynolds, 253 F.3d at 1343)(citation omitted). To prove an adverse effect caused by this conflict, a defendant has to demonstrate that the defense attorney could have pursued a plausible alternative strategy, the alternative was reasonable, and the alternative strategy was not followed because it conflicted with the attorney's external loyalties. Id.

Williams has not shown an actual conflict of interest. The only 'conflict of interest' Williams alleges involves counsel's alleged belief that Williams was guilty of the crimes charged. (Doc. 93-1 at 8). At no point in his motion does Williams point to any specific instance in the record where this conflict presented itself, nor does he make a factual showing of inconsistent interests. (Id.). Williams presents no alterative course of action that could have been followed but for counsel's belief in Williams' guilt. (Id.) Williams claims a merely speculative conflict of interest in this case, and that is not enough to support a claim for ineffective assistance of counsel. See McCorkle, 325 F. App'x. at 808.  Therefore, this claim is

due to be dismissed on these grounds.

### 2. Counsel was ineffective for failing to present the issue of entrapment or inducement

Williams alleges counsel was ineffective for not presenting the issue of entrapment or inducement to the jury or to the Court. (Doc. 95 at 1). Williams believes that he was entitled to a jury instruction on entrapment because there was sufficient evidence to support such an instruction, and effective counsel would have presented this to a court. (Id.). Williams claims that the evidence of his involvement with CW was based solely on statements by CW, who has "gone through tremendous lengths to deceive in the past". (Doc. 104 at 3). Williams asserts that there was no mention of drugs in his conversation with CW, and he was not aware of the contents of the bag he was transporting for CW. (Id.). The illegal act, Williams alleges, was set up by CW and the Government, and therefore fits the definition of entrapment under the law. (Id.).

"An affirmative defense of entrapment requires two elements: 1) government inducement of the crime; and 2) lack of predisposition on the part of the defendant." United States v. Sistrunk, 622 F.3d 1328, 1333 (11th Cir. 2010)(citations omitted). An entrapment defense is not automatic, but requires an evidentiary hearing, where the defendant bears the initial burden of production. Id. Once met, "the burden shifts to the

government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." Id. "Evidence of the government's mere suggestion of a crime or initiation of contact is not enough. Id. Instead, government inducement requires an element of persuasion or mild coercion." Id.

Williams cannot meet even the initial burden to prove entrapment in this case. Based on the record, Williams had previously made runs with CW, and there was evidence of a pre-existing criminal relationship between the two. (Doc. 87 at 25-36). Williams offers no evidence that he was induced, threatened, or coerced into making a pickup for CW in the instant case. (Docs. 94, 95, 104, 108). While Williams attempts to argue in both his reply and supplemental response that he was not previously the target of any criminal investigation, and that he was simply doing a "favor" for an acquaintance, that argument is refuted by the record. (Docs. 104 at 4-5; 108 at 11-21).

Williams also gives no evidence of any type of persuasion or coercion by the Government. While Williams argues that the Government was involved in setting up the call with CW to "try[] to get [Williams] to do something illegal" (Doc. 108 at 11-21), that is not sufficient to prove persuasion or coercion. It is clear from the record that Williams and CW had a pre-existing relationship, and Williams did not hesitate to perform the

'favor' asked of him by CW. (Doc. 87 at 25-36). Williams attempts to argue that the "lost", "unrecorded", and "unintelligible" parts of the his conversations with CW would show that he was not a willing participant in the criminal act (Doc. 108 at 11-21), but the intelligible portion of the discussion between CW and Williams clearly refutes that claim. (Doc. 87 at 25-36).

An affirmative defense of entrapment would have been futile based upon the evidence in this case, as Williams cannot show that even the basic elements of the defense could be met. Therefore, counsel's failure to present a defense of entrapment was reasonable under professional standards. See Strickland, 466 U.S. at 687-688. The lack of evidence for this defense supports the Court's subsequent conclusion that Williams could not show that if counsel had presented this defense, the outcome of the trial would have been different. See id. at 693-694. To the extent that Williams argued that the jury should have been given a "more specific knowledge" instruction in conjunction with an entrapment defense (Doc. 104 at 3), that argument also fails, as the requested instructions were not likely to be given even if presented to the court. Therefore, there is no support for an ineffective assistance of counsel claim based upon counsel's failure to present an entrapment defense, and said claim is due to be dismissed on those grounds.

**3. Counsel was ineffective for failing to advise Petitioner as to whether he should seriously consider any plea offers.**

Williams claims in his Reply to the Government's Response that counsel never advised him on whether he should seriously consider a plea offer. (Doc. 104 at 1). Counsel allegedly advised Williams that he had a defense on multiple occasions, and Williams claims that "not being affluent in criminal law had all the trust and belief in counsel based on what counsel expressed to him." (Id.)

As a general rule, defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). If defense counsel allows an offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render effective assistance as required by the Constitution, and the question then becomes what, if any, prejudice resulted from the delay. Id. at 1408-1409. The Court in Frye described what is required to show this prejudice:

> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it,

> if they had the authority to exercise that discretion
> under state law. To establish prejudice in this
> instance, it is necessary to show a reasonable
> probability that the end result of the criminal
> process would have been more favorable by reason of a
> plea to a lesser charge or a sentence of less prison
> time. Cf. Glover v. United States, 531 U.S. 198, 201,
> 121 S. Ct. 696, 148 L.Ed.2d 604 (2001)("[A]ny amount
> of additional jail time has Sixth Amendment
> significance")".

Id. Denial of guilt is not dispositive on the question of whether a defendant would have accepted a plea offer, but it is a relevant consideration. Osley v. United States, 751 F.3d 1214 (11th Cir. 2014); see also, Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005)(noting the defendant's assertion of innocence during and after trial undermined his contention that he would have accepted a plea deal); Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003)(same); Cullen v. United States, 194 F.3d 401, 407 (2d Cir. 1999)(same); United States v. Stevens, 149 F.3d 747, 749 (8th Cir. 1998)(same).

As an initial matter, Williams does not bring forth any credible evidence that a plea bargain was ever offered to Williams by the State. Assuming, arguendo, that such a plea offer existed, counsel would have a duty to convey that plea offer to Williams. See Frye, 132 S. Ct. at 1408. Though there may have been a showing of deficient performance by counsel if such a plea offer existed and was not conveyed, Williams still could not show prejudice from this deficiency.

There is no evidence, either in the record or from Williams himself, that Williams would have accepted an early plea deal had such a deal been presented to him. In both his trial and the instant motion, Williams maintains innocence of the crime for which he was convicted. While denial of guilt is not dispositive on this issue, it is a relevant consideration. See Osley, 751 F.3d at 1214. In the instant case, Williams vehemently contends that he had no knowledge that he was committing the crime for which he was charged. Such a fervent claim of innocence, coupled with his inability to provide evidence that the Government or court would have accepted any hypothetical plea offers, makes the instant claim unable to support the showing of prejudice required by Strickland. See Osley, 751 F. 3d 1214; Strickland, 466 U.S. at 693-694.

### 4. Counsel was ineffective for not challenging the information provided by CW, and for not calling CW as a witness

Williams claims in his Reply to the Government's Response and his Amended/Supplemental Response that counsel was ineffective for not arguing that Williams' Confrontation Clause rights were violated because he was not able to confront Informant CW, who was a "centerpiece of the investigation". (Docs. 104 at 2; 108 at 35-37). According to Williams, counsel should have also challenged CW after "the continuous change of testimony and the variety of comments used throughout that

differed pending the outcome that the government was trying to present for their benefit." (Doc. 104 at 2). He claims the court allowing this evidence without objection severely prejudiced him at trial, and that his counsel was ineffective for not subpoenaing CW as a witness. (Id.; Doc. 108 at 35-37).

The Sixth Amendment's Confrontation Clause protects the right of the accused to be confronted with the witnesses against him. See U.S. Const. amend. VI; Secretary, Florida Dep't of Corrections v. Baker, 406 F. App'x 416, 423 (11th Cir. Dec. 27, 2010)("The Confrontation Clause guarantees the defendant the opportunity to cross-examine the witnesses against him."). The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to cross-examination. Dean v. Crosby, 2009 WL 210706 at *8 (M.D. Fla. January 28, 2009).

The Sixth Amendment only excludes "testimonial" hearsay of a declarant who is unavailable at trial and who the defendant had no prior opportunity to cross-examine. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). The Sixth Amendment right to confrontation "does not bar the use of testimonial statements for purposes other than establishing truth of the matter asserted." Id. at 60 n. 9, 124 St. Ct. 1354, see United States v. Byrom, 910 F.2d 725, 737 (11th Cir. 1990)(noting that a confidential informant's

statements in a taped conversation with a defendant are admissible to prove content, so long as informant's statements are not admitted for the truth asserted). If the statements are merely offered to provide context to the admissions about activities, knowledge and intent, then they do not run afoul of the Confrontation Clause. U.S. v. Toepfer, 317 F. App'x 857, 2008 WL 2673878 at *1 (11th Cir. July 9, 2008); see, e.g., United States v. Hendricks, 395 F.3d 173, 183-84 (3d Cir. 2005).

A defendant must point to the testimony that allegedly violated the Confrontation Clause and show that it is indeed being used to prove the truth of the matter asserted. See Garza v. United States, 2013 WL 5529600 at *7 (S.D. Ala. October 4, 2013). Williams fails to do that in this case. At no point in his petition, reply, or amended/supplemental response does Williams specify what part of Informant CW's testimony he believes to be testimonial in violation of the Confrontation Clause. He never elaborates as to what part of CW's testimony he believes to be inconsistent. At no point does Williams state what bringing CW to the stand could have achieved in his defense. As such, he cannot support a claim that counsel was ineffective for failing to object to such evidence or to bring CW as a witness. See Garza, 2013 WL 5529600 at *7.[9]

---

[9] To the extent that Williams argues that CW's statements were "inculpatory" under Eleventh Circuit precedent, (Doc. 104 at 6), there is no indication of what statements Williams is referring to, or how these statements were

### 5. Counsel was ineffective for not challenging the testimony of Deputy Cassidy

Williams claims that counsel was ineffective in his cross-examination of Deputy Cassidy, a witness for the prosecution. (Doc. 93-1 at 4). An effective cross-examination, according to Williams, would "have revealed a lack of experience and knowledge in the narcotics field". (Id., Doc. 108 at 47). He also believes that an adequate cross-examination would have revealed that Deputy Cassidy "was on numerous occasions in violations of perjury on himself as well duplicating the exact same fictitious verbiage as the criminal informant." (Doc. 93-1 at 4). Williams also alleges in his Reply to the Government's Response that his Confrontation Clause rights were violated as well, because the District Court limited cross-examination of Deputy Cassidy by "failing to order the government to disclose during trial information it had failed to turn over as required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), regarding the attempt to indict other prospects as presented by Informant[CW]". (Id.). Counsel did not object to these alleged Confrontation Clause violations.

Williams cites Brady to discuss the problems with Deputy Cassidy's testimony, stating the defense was entitled to impeachment evidence for government witnesses. (Doc. 104 at 2).

erroneous or "inculpatory". Therefore, those claims fail as vague and conclusory. See Randolph, 590 F.3d 1273 at 1276 n.1.

According to his argument, the district court erred in the cross-examination of Cassidy by "failing to order the government to disclose this admissible evidence to the defense during trial." (Id.). The evidence Williams claims should have been turned over included "(1) the subject matter of the investigation into other names mentioned by [CW]" and "(2) How [CW]was being benefitted by the government for being an informant." (Id.). Williams claims that this favorable evidence was material to the trial. (Id.). He does not, however, indicate how any of these alleged Brady violations relate to his ineffective assistance of counsel claim. This is therefore a vague, conclusory allegation that is not allowed under Randolph, 590 F.3d at 1291 n.1.

Williams' assertion that counsel was ineffective for failing to cross-examine Deputy Cassidy in order to reveal "his lack of experience and knowledge of the narcotics field" is refuted by the record. Deputy Cassidy testified at trial that he had been in law enforcement for thirteen years, is experienced in investigating drug trafficking, and is familiar with the use of confidential informants. (Doc. 87 at 21-22). Deputy Cassidy had used confidential informants in the past that previously provided accurate information leading to additional arrests. (Id. at 25). Deputy Cassidy testified in this case because he was present during the taped phone calls between Williams and

CW, and was able to provide the foundation needed to admit the recordings into evidence. (Id. at 27). Therefore, it would have been futile for counsel to argue that Deputy Cassidy did not have the requisite experience necessary to testify, as this is clearly refuted by the experience testified to in the record.

Williams' claims are further refuted by the record when reviewing the cross-examination performed by counsel. During this cross-examination, counsel pointed to the bias of the informant, stating "he's trying to save himself". (Id. at 39). Counsel also showed that CW could not positively identify co-defendant Burke, and that nowhere in the recordings are the words "kilogram", "cocaine", or "narcotics" said by Williams or CW. (Id. at 42-45). The record makes it clear that counsel did ask appropriate questions about the material issues of the Williams' defense, acting reasonably under the circumstances. See Strickland, 466 U.S. at 687-688. Williams can therefore not even meet the first prong of Strickland by showing that counsel's performance was deficient.

To the extent that Williams claims that Deputy Cassidy perjured himself "on numerous occasions", he never offers any evidence to support this claim. (Doc. 93-1). The only area in any filings where Williams points to any alleged inconsistencies in Agent Cassidy's arguments can be found in the Amended/Supplemental Response, where Williams points to three

instances wherein he believes Agent Cassidy testifies falsely. (Doc. 108 at 26-28). Williams claims that Agent Cassidy stated that a quarter kilo was seized from CW, but CW's criminal history shows a half-kilo was seized. (Id. at 26). Williams further claims that while Agent Cassidy stated CW claimed he did not know Edmond Burke, CW stated in a proffer statement that he saw Edmond Burke with another man. (Id. at 27). Finally, Williams states that Agent Cassidy testified that the proceeds from cocaine at issue in the instant case constituted the 'bread' that is referenced in the telephone conversation between Williams and CW and a statement by CW. (Id. at 27-28). Williams takes issue with this statement because he claims that nowhere in the recorded conversation were 4 or 5 kilos of cocaine mentioned. (Id. at 28).

At no point does Williams provided evidence to support his assertions that Agent Cassidy's testimony is perjured. The only source provided is an 'affidavit' which contains CW's criminal history, which was provided by Williams himself. (Doc. 65-67). Williams provides no information as to where he obtained this criminal history. This argument is therefore a conclusory assertion and accordingly, must fail. See Randolph, 590 F.3d at 1276 n.1.

**6.Counsel was ineffective for not challenging the designation of certain witnesses as 'experts'**

Williams claims in his Reply to the Government's Response that counsel was ineffective because he failed to provide the jury with specific instructions on expert witnesses. (Doc. 104 at 3). Specifically he claims that Deputy Cassidy did not have the "credentials" to be an expert witness. (Id.)

First, any attempt by Williams' counsel to challenge the designation of Agent Cassidy or Agent Greene as experts would have ultimately been futile. As stated above, sworn testimony from Deputy Cassidy indicates that he been in law enforcement for thirteen years, is experienced in investigating drug trafficking, and is familiar with using confidential informants. (Doc. 87 at 21-22). Agent Greene similarly testified to his experience in drug trafficking cases, stating that he has received certain training in such investigations and has commonly encountered the use of casinos for the laundering of drug proceeds. (Id. at 144-145). It is clear from the record that both men are experienced in their field, and any attempt by trial counsel to argue otherwise would have been unsuccessful.

Turning to the argument that counsel was ineffective in failing to provide the jury with proper instruction, it should be noted that in order to prove a claim of ineffective assistance of counsel, a petitioner must show that there is

prejudice that resulted from the lack of specific instructions to the jury. See <u>Hernandez v. Florida Dept. of Corr.</u>, 470 F. App'x 721 at *3 (11th Cir. 2012). No such prejudice is shown in this case.

### 7. Counsel was ineffective for failing to object to unintelligible tape recordings

Williams claims that counsel failed to properly file pretrial motions to exclude or suppress the playing of a "defective and unintelligible" tapes under Federal Rule of Evidence 404(b). (Doc. 93-1 at 4). Williams insists that this evidence unfairly prejudiced him, and presented evidence for "a charge that hadn't been adjudicated". (<u>Id.</u>). He additionally claims that this evidence violated Federal Rule of Evidence 403.

This claim is both refuted by the record and procedurally barred. The trial transcript shows that, while at times the words in the recording were unintelligible, the majority of the conversation is clear. (Doc. 87). Objecting on the basis of a defective tape recording would have therefore been futile, and cannot support a claim that counsel did not act reasonably under the circumstances.

### 8. Counsel was ineffective for failing to object to the "casino evidence"

Williams claims counsel was ineffective for failing to object to discovery material that was given "only days before the trial start date". (Doc. 93-1 at 5). This evidence is

further explained in Williams' Reply to the Government's Response, as Williams states that "the Casino's evidence" was not disclosed until November 14, four days before trial. (Doc. 104 at 10). This evidence was dated four years prior to the alleged conspiracy, and according to Williams, defense counsel did not object. (Id.). In his Amended/Supplemental Complaint, he further challenges the evidence, stating it was extremely prejudicial and counsel should have challenged the scope of the evidence presented. (Doc. 108 at 44-45).

Williams cannot meet either prong of Strickland when arguing this claim. The allegation that counsel did not object to the evidence is refuted by the record. (Doc. 87 at 67). When asked for his response to the introduction of this evidence, defense counsel stated that "..it's irrelevant; immaterial; unduly prejudicial" and "has no bearing on the circumstances that are here, which is whether he knowingly, with the requisite knowledge, possessed or agreed to possess the cocaine in question. It's just a side issue that is irrelevant and shouldn't be admitted." (Id.). The evidence was admitted over this objection, and trial counsel performed a cross-examination of the witness on the casino's evidence. (Id. at 94-98).

The record clearly reflects that counsel attempted to exclude the casino evidence in open court, though he was unsuccessful. (Id. at 67-68). This contradicts the statements

34

made by Williams in his motion for relief, and refutes the assertion that counsel did not act as reasonable counsel when presented with this evidence. See Strickland, 466 U.S. at 687-688. Therefore, the allegations that counsel was ineffective are without merit, and this claim is due to be dismissed.

### 9. Counsel was ineffective at Petitioner's sentencing

Williams claims that his counsel was ineffective during the course of his sentencing, and cites several different issues with the sentencing process that he believes justifies the vacating or reducing of his sentence. As an initial matter, Williams claims counsel was ineffective for failing to objecting to the untimely filing of a presentence report. (Doc. 93-1 at 5). Williams states that this report was filed two days prior to sentencing, which "left him without ample time to review and being in violation". (Id.).

In his Reply to the Government's Response, Williams claims there were "several errors" that were not addressed due to the time restriction. (Doc. 104 at 9). These included the fact that Williams made $20,000 from August to October selling seafood, while the PSI stated that he made that the whole year. (Id.). Williams further points out the PSI was correct in stating that excessive force was used against Williams while in custody, but that the Government failed to acknowledge this violation. (Id.).

During sentencing, Williams counsel challenged the firearm

enhancement found in the PSI, and a hearing was held. (Doc. 88).

The initial burden of proving counsel did not act reasonably regarding the pre-sentence report is difficult to meet, as the record reflects that counsel did challenge information in the PSI resulting in a hearing. (Id.). Even if this showing could be made regarding the first prong of Strickland, Williams falls short of showing what prejudice could be shown from the allegedly incorrect information. While Williams alleges that the shortened time from to review the PSI did not allow him ample time to review the report and respond to inaccuracies, he does not provide any indication as to how these inaccuracies in the report prejudiced him during sentencing. (Doc. 104). Without even argument of how the sentencing result would have differed with the earlier filing of the pre-sentence report, Williams cannot meet the burden of prejudice under Strickland, and his claim must therefore be dismissed. See Strickland, 466 U.S. at 693-694.

Williams also claims counsel was ineffective for failing to "adequately investigate and present any significant mitigating factors". (Doc. 93-1 at 7). According to Williams, his counsel should have informed the court that Williams suffered from "numerous physical, emotion, and mental ailments that could have been used at sentencing for consideration of any downward departures." (Id.). Williams claims counsel never requested or

36

reviewed Williams' medical, employment, psychiatric, or school records, or spoke with friends or family members that were familiar with issues Williams may suffer from. (Id.) Prejudice was suffered, Williams claims, because the court never had the chance to consider these factors in sentencing. (Id.).

At no point in his motion for relief does Williams indicate what physical, emotional, or mental ailments he suffers from. (Id.). At no point does he indicate how these nebulous potential ailments would constitute grounds for a downward departure in a sentencing hearing. (Id.). He casts a wide net of potential mitigation factors, and in doing so creates the same type of vague and conclusory claims that have been present throughout this petition. Therefore, these claims are due to be dismissed on these grounds. See Randolph, 590 F.3d at 1276 n.

Williams raises other claims challenging his sentencing in his Amended/Supplemental Response. He believes his sentence should be set aside or modified based upon the statement of the undersigned that his sentencing guidelines are higher because he didn't accept responsibility for his action. (Doc. 108 at 58). He further argues that his counsel was ineffective for failing to challenge the denial of his Motion for Acquittal by re-urging the issue at sentencing. (Id. at 61). Both these arguments fail on their merits.

In support of his claim that his sentence should be set

aside based upon the undersigned's statement, Williams cites
United States v. Davila, 2011 U.S. App. LEXIS 25864 (11th Cir.
2011), which he claims holds that when the district court
contrasts the sentence a defendant would have received with a
guilty plea with the sentence he would receive if he goes to
trial, judicial participation is presumed and the conviction
must be set aside. (Doc. 108 at 58). That is a misinterpretation
of United States v. Davila, 133 S. Ct. 2139, 2149-2150
(2013)(judgment vacated and remanded to analyze whether the
remarks made by the magistrate judge appearing to urge the
defendant to cooperate in order to obtain favorable sentencing
consequences were prejudicial). The question in the above-
referenced case turned on whether the remarks of a magistrate
judge prior to a guilty plea violated Federal Rule of Criminal
Procedure 11(c)(1), which states that the court cannot
participate in plea discussions. In the instant case, the
remarks at issue were made at sentencing, long after any
hypothetical plea discussions would have taken place. Therefore,
the use of this case to claim error is misguided, and the claim
must fail.

Moreover, there is no indication from the facts of record
that counsel would have been successful if he had attempted to
challenge the denial of the motion for acquittal at sentencing.
Indeed, counsel moved for judgment of acquittal on the basis

that the Government had failed to establish the material elements of the charge. (Doc. 87 at 172). He argued that the Government failed to establish knowing and intentional conduct on the part of Williams, that the Government failed to establish that Williams understood what it was that CW was asking him to do, and failed to establish that Williams understood what the subject matter of the transaction was. (Id.). The Court denied the motion as to Count One, and engaged in a discussion about whether the evidence supported acquittal on Count Two. (Id. at 172-174). After review of the evidence, the court denied the motion as to Count Two. (Id. at 174). It is clear from the record that defense counsel made his argument during trial, and the Court carefully considered the argument. There is no meritorious reason to suggest that any novel arguments on the subject could have presented at sentencing. Therefore, counsel was not ineffective for failing to re-address the issue. See Strickland, 466 U.S. at 693-694.

### 10. Counsel was ineffective for failing to have a trial strategy

Williams claims that counsel "failed to have any trial strategy in any capacity that would have assisted petitioner in claiming his innocence" by bringing up "the numerous misstatements and errors made at trial". (Doc 93-1 at 5). In his Amended/Supplemental Complaint, Williams seems to elaborate on

this, stating that his counsel was ineffective "for completely failing to provide any defense at the trial of Petitioner", noting that he failed to object to any of the questions asked by the prosecution, failed to challenge any of the exhibits entered into evidence, failed to call any witnesses on behalf of the defense, and failed to investigate the facts of the case. (Doc. 108 at 50-57). He further states that the cumulative effect of all the errors by counsel support his requests for relief. (Doc. 108 at 62).

To the extent that this allegation is a summation of all the previous claims made in the petition, the claim fails for the multiple reasons discussed supra. Ultimately these claims are just vague attempts at pleading ineffective assistance of counsel, and as stated repeatedly, such a claim cannot prevail. See Randolph, 590 F.3d at 1276 n.1.

### D. Prosecutorial/Judicial Misconduct

In addition to his many claims against his counsel, Williams also alleges in his Amended/Supplemental Memorandum that his sentence should be set aside based upon prosecutorial and judicial misconduct. (Doc. 108 at 39-45, 59-60). Williams alleges that AUSA Bedwell made a variety of inappropriate and unsupported remarks during the duration of the trial, such as stating that greed was a motive for the crime and Williams was a "drug dealer". (Id. at 39-40). Williams claims these statements

were "a deliberate attempt to inflame the jury against Petitioner…". (Id. at 39).

To establish prosecutorial misconduct, the remarks made by the prosecutor must be improper, and the remarks must prejudicially affect the substantial rights of the defendant. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006)(citations omitted). A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks made by the prosecutor, the outcome of the trial would be different. Id. Therefore, where there is "sufficient independent evidence of guilt, any error is harmless." Id. The undersigned finds that Ms. Bedwell's statements were a fair inference from the facts presented and did not improperly prejudice the petitioner.

Further, Williams believes that the actions of the undersigned were improper, because she participated "in the prosecution of the Defendant by helping the AUSA Bedwell on several occasions in presenting evidence and instructing her on how to present evidence." (Id. at 59). On the subject of judicial misconduct, the Eleventh Circuit has held that it is within the province of the trial judge to assist the jury in arriving at a just conclusion by "explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon

41

the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." Wilson v. Bicycle South, Inc., 915 F. 2d. 1503, 1508 (11th Cir. 1990)(quoting Quercia v. United States, 289 U.S. 466, 469, 53 S. Ct. 698, 698-99,77 L. Ed. 1321 (1932)). The trial judge will not be reversed unless her comments "excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Id. (quoting Quercia, 289 U.S. at 472, 53 S. Ct. at 700). To determine whether such prejudice exists and has affected the parties' substantial rights, the court must consider the record as a whole and not merely isolated remarks. Id. at 1509 (citations omitted).

Petitioner complains that the undersigned assisted the prosecution by asking whether the government still intended to call an identified witness, the defendant's sister. (See transcript at Doc. 87, p.99). It is clear from the transcript that this accusation is meritless. But in any event, the undersigned made it clear in her instructions to the jury that they were not to take any of her comments as having an opinion regarding the outcome of the case:

> "You shouldn't assume, from anything I've said, that I have any opinion about the factual issue in the case except for my instructions to you on the law. You should disregard anything I may have said during the trial in arriving at your own decision about the facts."

42

(Doc. 87 at 211). In light of trial court's cautionary instructions, and abundance of other evidence concerning Williams' involvement in the crime charged, this Court finds that any remarks, were not prejudicial to the Petitioner.

### III. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, finds that a certificate of appealability in this case is due to be **DENIED**. 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should be issued [only] when the prisoner shows... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1064, 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983)), includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.")(internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

Williams' petition does not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Williams' claims should be resolved in a different manner or that Williams deserves to proceed further. Based on the straightforward application of clear Circuit precedent, no reasonable jurist could differ on the appropriate disposition of his claim on the record presented. As a result,

Williams is not entitled to a certificate of appealability, and consequently, is not be permitted to proceed *in forma pauperis* on appeal.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 93) is **DENIED**, this action be dismissed, and judgment is entered in favor of Respondent, the United States of America, and against Petitioner, Raymond Donovan Williams. Williams is not entitled to issuance of a Certificate of Appealability.

**DONE** and **ORDERED** this **30**th day of **January 2017.**

<u>  /s/ Kristi K. DuBose</u>
**UNITED STATES DISTRICT JUDGE**